**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MARILEE C. GLOVER-MOTT, Derivatively and on behalf of BUMBLE INC., | Case No.: 1:22-cv-01070-MN |
| Plaintiff, | |
| v. | |
| WHITNEY WOLFE HERD, ANURADHA B. SUBRAMANIAN, ANN MATHER, CHRISTINE L. ANDERSON, R. LYNN ATCHISON, SACHIN J. BAVISHI, MATTHEW S. BROMBERG, AMY M. GRIFFIN, JONATHAN C. KORNGOLD, JENNIFER B. MORGAN, ELISA A. STEELE, and PAMELA A. THOMAS-GRAHAM, | |
| Defendants, | |
| and | |
| BUMBLE INC., | |
| Nominal Defendant. | |
| MICHAEL SCHIRANO, Derivatively and On Behalf of BUMBLE INC., | Case No. 1:23-cv-00558-MN |
| Plaintiff, | |
| vs. | |
| BLACKSTONE, INC., BLACKSTONE GROUP MANAGEMENT L.L.C., BXG BUZZ HOLDINGS L.P., BX BUZZ ML-1 HOLDCO L.P., BX BUZZ ML-1 GP LLC, BXG HOLDINGS MANAGER L.L.C., BLACKSTONE GROWTH ASSOCIATES L.P. BXGA L.L.C, BCP BUZZ HOLDINGS L.P., BX BUZZ ML-2 HOLDCO L.P., BX BUZZ ML-2 GP LLC, BCP VII HOLDINGS MANAGER-NQ L.L.C., BLACKSTONE MANAGEMENT ASSOCIATES VII NQ L.L.C., BMA VII NQ L.L.C., BSOF BUZZ AGGREGATOR L.L.C., BX BUZZ ML-3 HOLDCO L.P., BX BUZZ ML-3 GP LLC, BLACKSTONE STRATEGIC OPPORTUNITY ASSOCIATES L.L.C., | |

BLACKSTONE HOLDINGS II L.P.,
BLACKSTONE HOLDINGS I/II GP L.L.C.,
BTO BUZZ HOLDINGS II L.P., BX BUZZ
ML-4 HOLDCO L.P., BX BUZZ ML-4 GP
LLC, BTO HOLDINGS MANAGER L.L.C.,
BLACKSTONE TACTICAL
OPPORTUNITIES ASSOCIATES L.L.C.,
BTOA L.L.C., BLACKSTONE HOLDINGS
III L.P., BLACKSTONE HOLDINGS III GP
L.P., BLACKSTONE HOLDINGS III GP
MANAGEMENT L.L.C., BLACKSTONE
BUZZ HOLDINGS L.P., BX BUZZ ML-5
HOLDCO L.P., BX BUZZ ML-5 GP LLC,
BTO HOLDINGS MANAGER-NQ L.L.C.,
BLACKSTONE TACTICAL
OPPORTUNITIES ASSOCIATES-NQ
L.L.C., BTOA-NQ L.L.C, BLACKSTONE
TACTICAL OPPORTUNITIES FUND-FD
L.P., BX BUZZ ML-6 HOLDCO L.P., BX
BUZZ ML-6 GP LLC, BLACKSTONE
TACTICAL OPPORTUNITIES III-NQ L.P.,
BTO DE GP-NQ L.L.C., BLACKSTONE
FAMILY INVESTMENT PARTNERSHIP-
GROWTH ESC L.P., BX BUZZ ML-7
HOLDCO L.P., BXG SIDE-BY-SIDE GP
L.L.C, WHITNEY WOLFE HERD,
ANURADHA B. SUBRAMANIAN, ANN
MATHER, CHRISTINE L. ANDERSON, R.
LYNN ATCHISON, SACHIN J. BAVISHI,
MATTHEW S. BROMBERG, AMY M.
GRIFFIN, JONATHAN C. KORNGOLD,
JENNIFER B. MORGAN, ELISA A.
STEELE, and PAMELA A. THOMAS-
GRAHAM,

                              Defendants,

      and

BUMBLE INC.,

                    Nominal Defendant.

**PLAINTIFFS MARILEE C. GLOVER-MOTT AND MICHAEL SCHIRANO'S
OPPOSITION BRIEF TO CITY OF VERO BEACH POLICE OFFICERS'
RETIREMENT FUND'S AND WILBERT ALBERTO
<u>OTERO SANCHEZ'S MOTION FOR PERMISSIVE INTERVENTION</u>**

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ................................................................................................................... 3

A. THE COURT SHOULD NOT PERMIT INTERVENTION. ................................................... 3

    1. Proposed Intervenors' Untimely Intervention Motion Would Prejudice Plaintiffs'
       Claims, which Cannot Be Heard in the Court of Chancery. ........................................ 4

    2. Intervention Should Be Unavailable to Proposed Intervenors for Lack of Their Interest
       in the Existing Litigation. ........................................................................................... 7

    3. Proposed Intervenors Have Adequate Alternative Means of Asserting Their Rights in
       the Court of Chancery. ............................................................................................. 11

B. THE COURT SHOULD NOT GRANT THE STAY. ......................................................... 12

    1. The Stay Will Prejudice Plaintiffs by Delaying Adjudication
       of All Claims in Favor of a Court of Limited Jurisdiction. ........................................ 12

    2. A Stay Will Not Simplify the Issues Because the Court of Chancery
       Cannot Adjudicate Claims Asserted Pursuant to the Exchange Act. ........................ 16

    3. The Stay Will Harm Judicial Economy by Delaying Full Adjudication of All Claims
       Asserted on Behalf of Bumble. ................................................................................ 17

    4. None of the Factors Governing Federal Abstention Weigh in Favor of a Stay. ........... 18

C. THE COURT SHOULD DECLINE TO GRANT THE ALTERNATIVE RELIEF...................... 19

III. CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITES

**Cases**

*Alsoy v. Ciceksepeti Internet Hizmetleri Anonim Sirketi*,
    232 F. Supp. 3d 613 (D. Del. 2017)........................................................ 12

*Biondi v. Scrushy*,
    820 A.2d 1148 (Del. Ch. 2003)............................................................... 9

*Cal. State Teachers' Ret. Sys. v. Alvarez*,
    179 A.3d 824 (Del. 2018) ...................................................................... 20

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988)............................................................................... 19

*CBV, Inc. v. Chanbond, LLC*,
    2023 U.S. Dist. LEXIS 95355 (D. Del. June 1, 2023)..........................7-8

*Ciro, Inc. v. Gold*,
    816 F. Supp. 253 (D. Del. 1993)............................................................ 19

*Citizens Against Casino Gambling in Erie Cty. v. Hogen*,
    704 F.Supp.2d 269 (W.D.N.Y. 2010) ..................................................... 5

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)........................................................................ 12, 18

*Cottrell v. Duke*,
    737 F.3d 1238 (8th Cir. 2013) ........................................................ 19-20

*Davis v. J.P. Morgan Chase & Co.*,
    775 F. Supp. 2d 601 (W.D.N.Y. 2011) .................................................. 11

*Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*,
    847 F.2d 1038 (2d Cir. 1988)................................................................. 5

*Gen. Star Indem. Co. v. V.I. Port Auth.*,
    224 F.R.D. 372 (D.V.I. 2004) ......................................................... 10, 20

*Hastey v. Welch*,
    449 F. Supp. 3d 1053 (D. Kan. 2020).................................................... 19

*In re Alphabet Inc. S'holder Derivative Litig.*,
    2020 U.S. Dist. LEXIS 208528 (N.D. Cal. June 9, 2020) ................ 11, 14

*In re Am. Capital Agency Corp. S'holder Derivative Litig.*,
    2017 U.S. Dist. LEXIS 122119 (D. Md. Aug. 2, 2017) ................... *passim*

*In re DaVita Inc. S'holder Derivative Litig.*,
  2018 U.S. Dist. LEXIS 105528 (D. Del. June 25, 2018)................................................. 15, 16

*In re Facebook, Inc. S'holder Derivative Privacy Litig.*,
  367 F. Supp. 3d 1108 (N.D. Cal. 2019) .......................................................................... *passim*

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  2013 U.S. Dist. LEXIS 180186 (S.D.N.Y. Dec. 20, 2013) .................................................... 7

*In re Fine Paper Antitrust Litig.*,
  695 F.2d 494 (3d Cir. 1982)...................................................................................................... 4

*In re Resolute Energy Corp. Sec. Litig.*,
  2021 U.S. Dist. LEXIS 19193 (D. Del. Feb. 1, 2021) .......................................................... 19

*In re RH S'holder Derivative Litig.*,
  2019 U.S. Dist. LEXIS 11128 (N.D. Cal. Jan. 23, 2019) ............................................... 13, 14

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999)........................................................................................ 6, 15, 18

*Kooker v. Baker*,
  497 F. Supp. 3d 1 (D. Del. 2020) ......................................................................................... 19

*Levine v. Smith*,
  591 A.2d 194 (Del. 1991) ................................................................................................ 8, 15

*Luster v. Puracap Lab'ys, LLC*,
  2023 U.S. Dist. LEXIS 4822 (D. Del. Jan. 11, 2023)................................................... 3, 5, 11

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006)..................................................................................................... 5

*McDerby v. Daniels*,
  2010 U.S. Dist. LEXIS 59489 (D. Del. June 16, 2010) .......................................................... 19

*McMurray v. De Vink*,
  27 F. App'x 88 (3d Cir. 2002) ......................................................................................... 12, 18

*Minersville Coal Co. v. Anthracite Exp. Assoc.*,
  58 F.R.D. 612 (M.D. Pa. 1973)............................................................................................... 4

*Motorola Credit Corp. v. Uzan*,
  388 F.3d 39 (2d Cir. 2004)....................................................................................................... 7

*Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995)....................................................................................................... 4

*NACCO Indus. v. Applica Inc.*,
   997 A.2d 1 (Del. Ch. 2009) ............................................................... 6, 19

*Seafarers Pension Plan v. Bradway*,
   23 F.4th 714 (7th Cir. 2022) ............................................................ *passim*

*Silverman v. Miranda*,
   116 F. Supp. 3d 289 (S.D.N.Y. 2015) ....................................................... 7

*Smith v. City of Enid*,
   149 F.3d 1151 (10th Cir. 1998) ............................................................ 19

*Taylor v. Campanelli*,
   29 F. Supp. 3d 972 (E.D. Mich. 2014) .................................................. 17-18

*Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regulation Comm'n*,
   787 F.3d 1068 (10th Cir. 2015) ............................................................ 11

*United States v. Alcan Aluminum, Inc.*,
   25 F.3d 1174 (3d Cir. 1994) .............................................................. 4-5

*United States v. Terr. of the V.I.*,
   748 F.3d 514 (3d Cir. 2014) ................................................................. 8

*Utah Ass'n of Ctys. v. Clinton*,
   255 F.3d 1246 (10th Cir. 2001) ............................................................ 11

*Young v. I.N.S.*,
   208 F.3d 1116 (9th Cir. 2000) ............................................................. 13

**Statutes**

15 U.S.C. § 78aa ............................................................................... 6

28 U.S.C. § 1367 .............................................................................. 6

8 *Del. C.* § 220 .............................................................................. 1

**Rules**

Fed. R. Civ. P. 24(b) ...................................................................... 3, 4

D. Del. L.R. 7.1.2(b) ...................................................................... 1-2

**Treatises**

7C Wright et al., *Federal Practice and Procedure* § 1913 (3d ed. 1998) ................... 11

iv

## I.    INTRODUCTION

Plaintiffs Glover-Scott and Schirano oppose the Proposed Intervenors'[1] motion ("Motion" or "Mot.") to permissively intervene in and stay the above-captioned actions (the "Federal Actions").[2] The Proposed Intervenors provide no basis to upend this well-structured federal derivative litigation[3] on behalf of Bumble, Inc. ("Bumble" or the "Company") in favor of a Chancery Action that has no jurisdiction to hear Plaintiffs' well-pled federal claims. Plaintiffs here were the first to file, possess the same documents obtained pursuant to 8 *Del. C.* § 220 ("Section 220") as the Proposed Intervenors, and have incorporated those documents extensively into their Operative Complaint.

Dispositive motion briefing is also imminent here. Pursuant to the waiver of service executed by the Defendants and Rule 7.1.2(b) of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, Defendants' response to the Operative Complaint (presumably, a motion to dismiss) is due August 14, 2023, Plaintiffs' opposition to any motion to dismiss would then be due August 28, 2023, and Defendants' reply

---

[1]    "Proposed Intervenors" are plaintiffs in a consolidated stockholder derivative action pending in the Delaware Court of Chancery styled *In re Bumble Inc. Stockholder Deriv. Litig.*, No. 2023-0130-JTL (Del. Ch. 2023) (the "Chancery Action").

[2]    The Federal Actions originally comprised four separate actions: (a) *Glover-Mott v. Herd, et al.*, No. 1:22-cv-01070-MN ("Glover-Mott Action"); (b) *The William Federman Irrevocable Trust v. Mather, et al.*, No. 1:22-cv-01120-MN ("Federman Action"); (c) *Messana. v. Anderson, et al.*, No. 1:22-cv-01195-MN ("Messana Action"); and (d) *Schirano v. Blackstone Inc., et al.*, No. 1:23-cv-00558-MN ("Schirano Action").

[3]    Since the filing of the Motion, certain issues have been simplified. More specifically, on July 20 and 26, 2023, respectively, the plaintiffs in the Federman and Messana Actions voluntarily dismissed their cases; both actions are now closed. Currently pending before this Court is Plaintiffs Marilee Glover-Mott and Michael Schirano's ("Plaintiffs") motion for consolidation of the Federal Actions and appointment of their counsel as lead and liaison counsel for the consolidated action (the "Consolidation/Lead Motion"), which is now unopposed—thus, the Federal Actions should soon be consolidated, Plaintiffs' proposed leadership structure approved, and the complaint in the Schirano Action designated as the operative complaint (the "Operative Complaint").

due September 5, 2023. Thus, Defendants' anticipated motion to dismiss Plaintiffs' Operative Complaint—which contains unique federal claims that cannot be heard by the Court of Chancery—will be fully briefed a full month before the October 5, 2023 motion to dismiss hearing in the Chancery Action. By all accounts, the Federal Actions and the Chancery Action are on equal footing.

Indeed, Plaintiff Glover-Mott was the first to initiate derivative litigation on behalf of Bumble by filing a complaint on April 15, 2022 in the U.S. District Court for the Southern District of New York, where the related securities class action styled *In re Bumble, Inc. Securities Litigation*, Case No. 1:22-cv-00624 (the "Securities Action") was pending. On August 15, 2022, the Glover-Mott Action was transferred to this Court by stipulation of the parties. In September 2022, the Glover-Mott Action was stayed by stipulation (the "Stay Order") pending resolution of the forthcoming motion to dismiss in the Securities Action, with Plaintiff Glover-Mott to receive any documents produced to other stockholders pursuant to Section 220 during the pendency of the stay. Meanwhile, on May 18, 2022, Plaintiff Schirano served his Section 220 demand upon Bumble, and, through February 2023, negotiated to receive internal documents pertinent to the alleged wrongdoing alleged in the Federal Actions, which Plaintiffs understand are the same documents that Proposed Intervenors obtained (the "Section 220 Documents"). On March 21, 2023, Plaintiff Glover-Mott received the Section 220 Documents pursuant to the Stay Order. On March 31, 2023, the plaintiffs in the Securities Action filed papers announcing that the parties had agreed to a proposed settlement, thus, according to its terms, the stay governing the Glover-Mott Action had expired because there would no longer be any determination on defendants' motion to dismiss in the Securities Action. Similarly, on May 22, 2023, Plaintiff Schirano filed the proposed Operative Complaint under seal in this Court, making extensive use of the Section 220 Documents.

Proposed Intervenors have been aware of the Glover-Mott Action since it was first filed in April 2022, aware as of March 2023 that the stay of the Glover-Mott Action was likely to be lifted due to the settlement of the Securities Action, and aware that as of May 2023 Plaintiff Schirano had filed the Operative Complaint utilizing the Section 220 Documents. Moreover, the Chancery Action was filed on January 19, 2023, and the Proposed Intervenors waited six months before showing any interest in this pending litigation as part of gamesmanship tactics to control the derivative litigation. Because Proposed Intervenors' requests for an intervention and various stays are untimely, prejudicial to the most comprehensive adjudication of the derivative claims (some of which cannot be heard in Proposed Intervenors' forum), implicate federal abstention principles, and Plaintiffs have the first-filed complaint, the Motion should be denied.

## II.   ARGUMENT

### A.   THE COURT SHOULD NOT PERMIT INTERVENTION.

Permissive intervention may be appropriate where the movant has a claim or defense that "shares with the main action a common question of law or fact."[4] Fed. R. Civ. P. 24(b). However, even where—as here—the proposed intervenors have common questions of law or fact, it is proper to deny intervention when they have adequate alternative means of asserting their purported rights. *See Luster v. Puracap Lab'ys, LLC*, 2023 U.S. Dist. LEXIS 4822, at *8 (D. Del. Jan. 11, 2023) (collecting cases). While District Courts have broader discretion to grant requests for permissive intervention than requests of intervention by right, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

---

[4]   Unless otherwise stated herein, all emphasis is added and internal citations and quotations are omitted.

Moreover, permissive intervention is properly denied when the movant has the same interest as an existing party. *See In re Facebook, Inc. S'holder Derivative Priv. Litig.* ("*Facebook*"), 367 F. Supp. 3d 1108, 1130-31 (N.D. Cal. 2019) (denying permissive intervention because the movant could not show he was inadequately represented by the existing plaintiffs who had "by definition … the same interest" as movant). Untimeliness is a sufficient reason to deny a motion to intervene. *See In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) ("[a]n application to intervene, whether of right or by permission, must be timely"). Further, when the intervention requested is permissive, a more conservative standard of timeliness applies. *See Minersville Coal Co. v. Anthracite Exp. Assoc.*, 58 F.R.D. 612, 614 (M.D. Pa. 1973) (collecting cases). While Plaintiffs concede Proposed Intervenors have a claim or defense that shares common questions of law or fact and meet jurisdictional requirements, the Motion should be denied because Proposed Intervenors are untimely, an intervention would cause delay and prejudice, Proposed Intervenors' interests are adequately represented by Plaintiffs, and Proposed Intervenors have alternative means of asserting their rights in the Court of Chancery.

### 1.    Proposed Intervenors' Untimely Intervention Motion Would Prejudice Plaintiffs' Claims, which Cannot Be Heard in the Court of Chancery.

The Court's discretion in granting a request for permissive intervention is constrained, first and foremost, by the undue delay and prejudice such intervention may cause the existing parties. *See* Fed. R. Civ. P. 24(b)(3) ("the court **must** consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights"). As an initial matter, one factor this Court examines is the timeliness of the intervention. *See Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) ("courts should be reluctant to dismiss a request for intervention [as of right] as untimely, even though they might deny the request if the intervention were merely permissive"). Generally, timeliness is "measured from the point at which

the applicant knew, or should have known, of the risk to its rights." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994). Although "timeliness is not just a function of counting days" and is "determined by the totality of the circumstances," an intervenor still must demonstrate it has taken "reasonable steps to protect its interest." *Id*. at 1181-82.

Here, Proposed Intervenors did not take reasonable steps to protect their interests—they offer no rational basis for why they delayed more than a year to file the Motion after they knew Glover-Mott had initiated the Federal Actions, six months after the first complaint was filed in the Chancery Action, four months after they knew the stay of the Glover-Mott Action was likely to be lifted, and two months after they knew Plaintiff Schirano had filed the proposed Operative Complaint utilizing the Section 220 Documents.[5] Indeed, Proposed Intervenors (baselessly) chastise Plaintiff Schirano for taking three months from receiving the totality of the Section 220 Documents in February 2023 until May 2023 to file the Operative Complaint, yet they took just as long to file their Motion.

Even though Proposed Intervenors' untimeliness is enough to stymie their request for intervention, the prejudice and delay the intervention would cause the Plaintiffs is the primary reason the Court should deny the Motion. *See Luster*, 2023 U.S. Dist. LEXIS 4822, at *9 (denying permissive intervention when there was "little to no efficiency to be gained" and intervention would prejudice the present parties). Namely, the fact that there was little litigation in the Federal

---

[5]    *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 390 (2d Cir. 2006) (finding motion to intervene untimely based, in part, on the fact that the related litigation's "complaint and other filings ... are publicly available for anyone to access"); *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1044 (2d Cir. 1988) (finding motion to intervene untimely because the proposed intervenors could have moved when they "were aware of this and related litigation"); *Citizens Against Casino Gambling in Erie Cty. v. Hogen*, 704 F.Supp.2d 269, 282 (W.D.N.Y. 2010) (finding the proposed intervenor had "notice" based on the prior filing of two related lawsuits).

Actions prior to the Motion is not coincidental—Proposed Intervenors' **sole** aim is to intervene prior to consolidation to cause chaos and control the derivative litigation. *See In re Am. Capital Agency Corp. S'holder Derivative Litig.* ("*Am. Capital*"), 2017 U.S. Dist. LEXIS 122119, at \*17 (D. Md. Aug. 2, 2017) ("entertaining H&N's efforts to attempt essentially to co-opt Plaintiffs' lawsuit and take over the litigation would further delay the case unnecessarily and likely would prejudice Plaintiffs' rights"). Because the goal of consolidation is "to streamline and economize pretrial proceedings so as to avoid duplication of effort," it follows that intervention delaying or preventing consolidation would causes the prejudice consolidation generally avoids. *See In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) (stating consolidation is a matter of "convenience and economy in administration").

Moreover, the prejudice intervention would cause here is magnified because this Court has exclusive jurisdiction over Plaintiffs' federal Exchange Act claims, which cannot be heard in the Court of Chancery. *See Seafarers Pension Plan v. Bradway*, 23 F.4th 714, 717 (7th Cir. 2022) (citing 15 U.S.C. § 78aa). As Proposed Intervenors concede, their state claims are virtually identical to those asserted by Plaintiffs. *See* Mot. at 6 (stating the parties "plead virtually identical state law breach of fiduciary duty and related claims for corporate wrongdoing"). Therefore, while this Court can adjudicate all the claims asserted by both parties, the Court of Chancery cannot. *Compare* 28 U.S.C. § 1367 (providing this Court supplemental jurisdiction over state claims) *with NACCO Indus. v. Applica Inc.*, 997 A.2d 1, 25 (Del. Ch. 2009) (finding the Court of Chancery cannot hear claims arising under the Exchange Act). Intervention would delay and prejudice adjudication of Plaintiffs' Exchange Act claims, which cannot be adjudicated elsewhere.[6] Indeed,

---

[6]    The court's holding in *Am. Capital* necessitates this result **even if** the federal claims were, at some purported hypothetical future date, dismissed. 2017 U.S. Dist. LEXIS 122119, at \*17

as Proposed Intervenors state, their own "counsel owe a fiduciary duty to act solely in Bumble's best interests, heedless of any personal interest they may have at stake." Mot. at 13. Proposed Intervenors seek to hold judicial efficiency hostage for the sake of ***their own*** personal interest in controlling the derivative litigation, thereby delaying the adjudication of ***all*** of the shareholder claims asserted. Accordingly, the Motion should be denied, as an initial matter, for its untimeliness and, more importantly, for the prejudice and delay it will cause.

### 2.    Intervention Should Be Unavailable to Proposed Intervenors for Lack of Their Interest in the Existing Litigation.

When the movant has the same interest in the pending litigation as the existing plaintiffs who adequately represent his or her rights, denial of permissive intervention is appropriate. *Facebook*, 367 F. Supp. 3d at 1130-31 (N.D. Cal. 2019) (denying permissive intervention when movant failed to make a showing of inadequate representation); *accord CBV, Inc. v. Chanbond, LLC*, 2023 U.S. Dist. LEXIS 95355, at *5 (D. Del. June 1, 2023) (finding the Third Circuit upholds "the denial of permissive intervention for the same reason that [it would deny] a motion for intervention by right.").[7] Proposed Intervenors have the same rights as Plaintiffs, and offer no reason that Plaintiffs are inadequate to represent them.

---

(declining to grant permissive intervention "based upon unsupported speculation concerning the substance and effect of future rulings regarding motions that have not yet been filed"); *accord Silverman v. Miranda*, 116 F. Supp. 3d 289, 300 (S.D.N.Y. 2015) (retaining jurisdiction when state law claims were "analytically identical" to federal claims the court previously decided); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2013 U.S. Dist. LEXIS 180186, at *29-32 (S.D.N.Y. Dec. 20, 2013) (finding that the "existence of subject matter jurisdiction in one action" can be used "to provide supplemental jurisdiction over claims in a related action" where the underlying facts "substantially overlap."); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56-57 (2d Cir. 2004) (declining to reject supplemental jurisdiction "after there [was] substantial expenditure in time, effort, and money in preparing the dependent claims").

[7]    A motion for intervention by right will be denied if the movant cannot demonstrate, among other things, that he has "sufficient interest in the litigation," his "interest may be affected or impaired," and "the interest is not adequately represented by an existing party in the litigation."

Specifically, while Proposed Intervenors are correct that Plaintiffs do not have proprietary interest in derivative claims that belong to Bumble, that premise cuts both ways. *Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991) (stating a derivative plaintiff "asserts on behalf of a corporation a claim belonging not to the shareholder, but to the corporation"). Therefore, Proposed Intervenors themselves also have no interest in their own claims, just as they have no cognizable interests in controlling this derivative litigation. *See Facebook*, 367 F. Supp. 3d at 1130 (denying permissible intervention because the movant had "by definition … the same interest" as existing plaintiffs and therefore had "no significant protectable interest in … the outcome of the cases before this Court"). This lack of interest, even notwithstanding their unexplained delay, is fatal to their Motion.

Moreover, Proposed Intervenors are simply wrong when they assert Plaintiffs' inadequacy on the basis that Plaintiffs allegedly do not have the superior and first-filed complaint. Rather, the Operative Complaint references the very same corporate documents from Bumble that Proposed Intervenors included in the Chancery Action.[8] Further, because this Court has exclusive jurisdiction over the Plaintiffs' federal claims, Proposed Intervenors cannot simply rely on their own conclusory remarks about Bumble's Exclusive Forum Provision or speculative future

---

*United States v. Terr. of the V.I.*, 748 F.3d 514, 519 (3d Cir. 2014). In *Facebook*, the factors showed the movant's prospective rights were adequately represented by the derivative plaintiffs such that intervention as of right was denied. *Facebook*, 367 F. Supp. 3d at 1130-31. Thereafter, the movant's request for permissive intervention was also denied in light of those factors. *Id.* at 1131. This is quite similar to the approach this Court took very recently in *CBV, Inc.* 2023 U.S. Dist. LEXIS 95355, at *10-14 (first rejecting intervention by right after finding movants' interests were adequately represented by the existing parties and then denying permissive intervention "for the reasons set forth above").

[8]    Indeed, if the Court finds that the Federal Actions and the Chancery Action are relatively on par (the Operative Complaint is comprised of the very same 220 Documents included in the Proposed Intervenors' complaint and the Federal Actions and the Chancery Action are on equal footing with regard to a motion to dismiss briefing schedule) the fact that the Plaintiffs were first on file tips the scales in favor of the Federal Actions proceeding, not the Chancery Action. *See Biondi v. Scrushy,* 820 A.2d 1148, 1159 (Del. Ch. 2003) ("first-filed factor" is important when "consideration of other relevant factors does not tilt heavily in either direction").

dismissal of those claims to assert a basis for intervention. *See Seafarers*, 23 F.4th at 721 (concluding Delaware law "does not authorize use of a forum-selection bylaw to avoid what should be exclusive federal jurisdiction over a case, ***particularly*** under the Exchange Act"); *Am. Capital*, 2017 U.S. Dist. LEXIS 122119, at *17 (denying permissive intervention when the request was "based upon unsupported speculation concerning the substance and effect of future rulings regarding motions that have not yet been filed").

First, Bumble's Exclusive Forum Provision specifies that "the Court of Chancery of the State of Delaware shall, ***to the fullest extent permitted by law***, be the sole and exclusive forum for … any derivative action or proceeding brought on behalf of the Corporation." Mot., Ex. B at 15. The emphasized passage shows that, contrary to Proposed Intervenors' insinuation, Bumble has not opted out of the Exchange Act. *See Seafarers*, 23 F.4th at 718 ("Delaware corporation law gives corporations considerable leeway in writing … bylaws with choice-of-forum provisions, but it … does not empower corporations to … opt out of the Exchange Act."). For example, in *Seafarers*, Boeing had a forum selection clause quite similar to Bumble's, wherein it designated the Court of Chancery as "the sole and exclusive forum for any derivative action." *Id*. As here, the *Seafarers* plaintiffs brought claims against Boeing under Section 14(a) of the Exchange Act. *Id.* at 719. Like the defendants in *Seafarers*, Proposed Intervenors seek to invoke Bumble's forum bylaw to force Plaintiffs "to raise [their] claims in a Delaware state court, which is not authorized to exercise jurisdiction over Exchange Act claims." *Id*. Therefore, the same reasoning that applied in *Seafarers* applies here—Bumble's Exclusive Forum Provision "cannot be applied to this derivative action asserting a claim that is subject to exclusive federal jurisdiction." *Id.* at 728.

Second, and contrary to Proposed Intervenors' argument, the merits of Plaintiffs' underlying federal allegations—which Plaintiffs anticipate briefing fully to the Court in response

to Defendants' expected motion to dismiss next month—are immaterial. *Id.* at 720 ("***Regardless*** of the ultimate merits of the claims, plaintiff's chosen forum in the federal district where Boeing is headquartered seems appropriate for the case."). Indeed, because Proposed Intervenors' interests are identical to those of the Plaintiffs, "there ***must*** be a concrete showing of circumstances in the particular case that make the representation inadequate." *Gen. Star Indem. Co. v. V.I. Port Auth.*, 224 F.R.D. 372, 377 (D.V.I. 2004). Proposed Intervenors do not argue their and Plaintiffs' interests are incongruent. *See* Mot. at 14 (admitting intervention is not sought to assert new claims). Further, Proposed Intervenors' argument of Plaintiffs' inadequacy rests upon the impact, if any, of Schirano's later-filing and Glover-Mott's failure to obtain Bumble's company records pursuant to Section 220.[9] As explained prior, both issues are moot—the Operative Complaint references those records and relates back to Glover-Mott's filing on April 15, 2022.

Finally, Proposed Intervenors' authorities do not support the premise that they may intervene when their interests are already adequately represented—to the contrary, their authority supports a denial of their Motion[10] or is simply inapplicable in these circumstances.[11] Rather, in

---

[9]     Glover-Mott not seeking company records prior to filing does not establish a divergence of her and Proposed Intervenors' interests. Glover-Mott received the 220 Documents through the negotiated Stay Order and has joined with Schirano to prosecute the Federal Actions utilizing the Operative Complaint, which incorporates the Section 220 Documents. Moreover, courts have denied permissive intervention in ***precisely*** those circumstances. *See Facebook*, 367 F. Supp. 3d at 1130-31 (denying permissive intervention when movant, unlike existing plaintiffs, had made demand pursuant to Section 220 as "a difference in how to strategically pursue a derivative action [did] not rise to the level of antagonism that would preclude adequate representation.").

[10]     *See Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1075 (10th Cir. 2015) (affirming denial of intervention when existing parties adequately represented movant's interests).

[11]     *See In re Alphabet Inc. S'holder Derivative Litig.*, 2020 U.S. Dist. LEXIS 208528, at *7 (N.D. Cal. June 9, 2020) (allowing intervention when no existing party opposed it); *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) (reversing denial of intervention when existing plaintiff did not oppose it and movant demonstrated the government's interests as plaintiff may be different than those of a private person).

cases involving substantially similar facts, the Court denies intervention. *See Facebook*, 367 F. Supp. 3d at 1131 (denying permissive intervention when movant had same interest as existing parties and sought to control the derivative litigation); *Am. Capital*, 2017 U.S. Dist. LEXIS 122119, at *17 (denying intervention when movant sought "essentially to co-opt Plaintiff's lawsuit" based on "unsupported speculation concerning the substance and effect of future rulings regarding motions that have not yet been filed"). As such, the Court should deny the Motion.

### 3. Proposed Intervenors Have Adequate Alternative Means of Asserting Their Rights in the Court of Chancery.

Even when all of the requirements under Rule 24(b) are met, this Court may decline to exercise its discretion to permit permissive intervention if Proposed Intervenors "have adequate alternative means of asserting their rights." *Luster*, 2023 U.S. Dist. LEXIS 4822, at *8 (citing 7C Wright et al., *Federal Practice and Procedure* § 1913 (3d ed. 1998) ("If the would-be intervenor already is a party to other litigation in which the intervenor's rights can be fully determined, or if there is another adequate remedy available to protect the intervenor's rights, this may persuade the court to deny leave to intervene."); *see also Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 605 (W.D.N.Y. 2011) (denying permissive intervention when existing plaintiffs in class action were adequate to protect the Proposed Intervenors' rights and "there are alternatives open to them which would be less disruptive to these proceedings").

Namely, Proposed Intervenors admit they do not seek intervention to add new claims. *See* Mot. at 14. Rather, their argument rests on the premise that Plaintiffs' federal claims are inadequate. *See* Mot. at 14-18. However, if those claims are fatally flawed, Proposed Intervenors, by definition, have no interest in them. Indeed, in arguing that the Court of Chancery is the superior forum for their state claims, which are their only claims, Proposed Intervenors admit that they are already a party to a litigation in which their rights can be fully determined. Therefore, there is no

11

reason that Proposed Intervenors need to intervene, when their rights are, as they argue, already asserted elsewhere more suited for that purpose. For that reason, the Motion should be denied.

### B.    THE COURT SHOULD NOT GRANT THE STAY.

The movant requesting a stay bears the burden of establishing the following three factors weigh in his or her favor: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, *i.e.*, the balance of harms; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will promote judicial economy, *e.g.*, how close to trial has the litigation advanced." *Alsoy v. Ciceksepeti Internet Hizmetleri Anonim Sirketi*, 232 F. Supp. 3d 613, 620 (D. Del. 2017). Prospective Intervenors cannot meet those factors. But, more importantly, when a stay would effectively decline this Court's jurisdiction over federal claims in favor of concurrent adjudication in a state court, federal abstention principles are necessarily implicated, and Prospective Intervenors cannot meet the heightened standard that governs those requests. *See Colo. River Water Conservation Dist. v. United States* ("*Colo. River*"), 424 U.S. 800, 817-18 (1976) (finding only exceptional circumstances permit a federal court to refuse to exercise its jurisdiction in deference to a state proceeding); *McMurray v. De Vink*, 27 F. App'x 88, 94 (3d Cir. 2002) (finding it an abuse of discretion to stay of a federal derivative action in favor of a Court of Chancery derivative action as "there is no distinction between abstaining from adjudicating the federal litigation on the one hand, and staying it on the other."). Accordingly, the relief requested should be denied.

### 1.    The Stay Will Prejudice Plaintiffs by Delaying Adjudication of All Claims in Favor of a Court of Limited Jurisdiction.

As already specified above regarding Proposed Intervenors' request to intervene, a stay would prejudice Plaintiffs. It is ***precisely*** this prejudice that motivates Proposed Intervenors, who seek to control the derivative litigation. Nonetheless, Proposed Intervenors' arguments about the

12

Plaintiffs' supposed avoidance of the Court of Chancery's jurisdiction are not only specious,[12] but premature, as no jurisdictional argument has yet to be asserted before this Court, and even if raised, must be rejected. *See Seafarers*, 23 F.4th at 721 (concluding Delaware law "does not authorize use of a forum-selection bylaw to avoid what should be exclusive federal jurisdiction over a case, ***particularly*** under the Exchange Act"). In any event, because Proposed Intervenors have "by definition … the same interest" as the existing parties, they have "no significant protectable interest … in the outcome of the cases before this Court." *See Facebook*, 367 F. Supp. 3d at 1130.

Further, the "especially lengthy or indefinite" stay Proposed Intervenors requested—namely, until the conclusion of the Chancery Action—"require[s] a greater showing to justify it." *In re RH S'holder Derivative Litig.*, 2019 U.S. Dist. LEXIS 11128, at *7 (N.D. Cal. Jan. 23, 2019) (quoting *Young v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000)). Proposed Intervenors' sole justification for an indefinite stay takes the form of a motion to dismiss on the basis of a jurisdictional argument that Defendants have not yet asserted. They cannot cite authority for the premise that the alleged weaknesses of the Plaintiffs' complaints constitute this required "greater showing," because none exists. *Am. Capital*, 2017 U.S. Dist. LEXIS 122119, at *17 (denying stay when the request was "based upon unsupported speculation concerning the substance and effect of future rulings regarding motions that have not yet been filed"). Rather, the circumstances here are unlike those where derivative plaintiffs have successfully sought stays.

---

[12]    Plaintiffs must also correct the record. Proposed Intervenors state that "[t]o date, Schirano neither reached out to the Proposed Intervenors nor notified the Chancery Court that he had made a demand." Mot. at 8. First, there is no obligation on the part of Schirano to notify the Court of Chancery of his 220 Demand. Moreover, between July 6 and 13, 2023, counsel for Schirano exchanged emails and had a phone call with counsel for the Proposed Intervenors regarding coordination of the actions. *See* Declaration of Melinda A. Nicholson ¶3, filed contemporaneously herewith. Proposed Intervenors declined the invitation to work together and instead filed the instant Motion. *Id.*

For example, in *Alphabet*, the movant was granted a limited stay of 120 days when he sought to aid the existing plaintiffs, who did not oppose his motion, by intervening to join them in opposition to a pending motion to dismiss with the inclusion of internal corporate documents the existing plaintiffs did not yet have. *See* 2020 U.S. Dist. LEXIS 208528, at *3-4. Here, however, Proposed Intervenors and Plaintiffs already have the same Section 220 Documents. Moreover, Proposed Intervenors are not proposing a short 120-day stay, unopposed by Plaintiffs, for the purpose of aiding them. Rather, in dedicating so much space to the supposed deficiencies of their complaints, Proposed Intervenors reveal they seek a stay ***precisely*** for the purpose of prejudicing Plaintiffs. Since Plaintiffs' Operative Complaint already incorporates the internal company documents that the existing parties were missing in *Alphabet*, the reasoning of that case—allowing the existing parties to gain the advantage of such documents—is not applicable herein.

These circumstances are also unlike *In re RH S'holder Derivative Litig*., where a derivative action was stayed over the objection of the plaintiffs to allow a securities action premised on the same facts to proceed. *See* 2019 U.S. Dist. LEXIS 11128, at *7-8. There, however, the derivative plaintiffs had already asserted claims for indemnification for any liability arising out of the securities action, such that it "must conclude before the plaintiffs can obtain the relief they seek." *Id*. Further, fact discovery in the securities action was set to close that very month and trial would commence by the end of the year. *Id*. Here, in contrast, Proposed Intervenors assert no claims that must be adjudicated before Plaintiffs can obtain relief and, as explained *supra*, whatever dismissal briefing will ensue regarding the Operative Complaint will conclude before the Court of Chancery hosts argument on Defendants' motion to dismiss Proposed Intervenors' complaint.[13]

---

[13]    Moreover, the parties in the Securities Action announced they reached a settlement on March 31, 2023, which effectively obliterates any argument that the Federal Actions should be

Thus, unlike the above cases, where the proposed stay resulted in no prejudice or even benefited the non-movants, the prejudice is plain here—Proposed Intervenors seek to completely *halt* the pending proceedings indefinitely and prevent Plaintiffs from prosecuting the Federal Actions. A stay also prejudices Plaintiffs by preventing them from initiating efforts to conclude these matters—such as with the adjudication of all state and federal claims and/or orderly settlement negotiations—with the benefit of a comprehensive Operative Complaint and appointment of lead counsel and plaintiffs. *See In re TMI Litig.*, 193 F.3d at 724 (finding consolidation promotes "convenience and economy in administration").

Most importantly, in requesting a stay, Proposed Intervenors are required to "make out a clear case of hardship or inequity in being required to go forward." *In re DaVita Inc. S'holder Derivative Litig.*, 2018 U.S. Dist. LEXIS 105528, at *6 (D. Del. June 25, 2018). As stated prior, Proposed Intervenors admit to having no personal interest in their own claims. *See Levine*, 591 A.2d at 200. Therefore, just as Proposed Intervenors cannot assert that they have cognizable interests in this matter to support their intervention, they also cannot argue that, absent a stay, their interests would be harmed. *See Facebook*, 367 F. Supp. 3d at 1130 (denying a stay because the movant had "no significant protectable interest in … the outcome of the cases before this Court"). The Court should accordingly deny the Motion because it would prejudice the existing parties, Proposed Intervenors have no interest in the pending matter, and Proposed Intervenors have failed to elucidate—because they cannot—any substantial justification for an indefinite stay.

---

stayed during the pendency of contested securities litigation. Indeed, it was for similar reasons articulated in *RH S'holder* that Glover-Mott agreed to stay her case after initially filing and which Proposed Intervenors now seek to find fault with.

**2.    A Stay Will Not Simplify the Issues Because the Court of Chancery Cannot Adjudicate Claims Asserted Pursuant to the Exchange Act.**

Proposed Intervenors' argument that a stay is appropriate is based on their conclusory remarks that it will "simplify the issues before this Court." Mot at 18. Their sole cited authority, *DaVita*, 2018 U.S. Dist. LEXIS 105528, does not support that premise. Instead, it cuts against their request. *Id*. at *8-10.

In *DaVita*, the derivative defendants moved for a stay in the District of Delaware pending the outcome of a motion to dismiss a related securities action in the District of Colorado. *Id*. at *2-3. Defendants supported their request by pointing out that a conflict existed for the company itself—namely, it had taken a defensive position in the securities action by "accus[ing] its directors of violations of securities laws, while, at the same time, defending itself against the same allegations" in the other action. *Id.* at *6-7. The Court granted the stay, because "***specifically***, it will relieve the tension on DaVita caused by alleging wrongful conduct in this matter while defending against substantially similar allegations of wrongful conduct in the Securities Action." *Id.* at 9-10. Here, Proposed Intervenors ask this Court to stay the Federal Actions in favor of claims filed in a state court of limited jurisdiction; they are not asking for a stay of a different cause of action filed in another federal court.[14] Thus, the most pressing factor supporting *DaVita*'s stay—the conflict in the company's litigation strategy between the two proceedings—is not present here. Rather, Proposed Intervenors premise their Motion ***wholly*** on speculation regarding the arguments Defendants would supposedly pursue in the Federal Actions. *See Am. Capital*, 2017 U.S. Dist. LEXIS 122119, at *17 (denying a request for permissive intervention and stay when it was "based upon unsupported speculation concerning the substance and effect of future rulings regarding

---

[14]    As discussed *supra*, this case is further inapposite because the Securities Action has reached a settlement as of March 2023.

motions that have not yet been filed"). Therefore, Proposed Intervenors provide no reason to believe a stay will simplify the issues before this Court. Rather, despite Bumble's Exclusive Forum Provision, exclusive federal jurisdiction rests in this Court by virtue of the fact that Plaintiffs have asserted claims under the Exchange Act. *See Seafarers*, 23 F.4th at 721. Accordingly, the request for a stay should be denied.

### 3. The Stay Will Harm Judicial Economy by Delaying Full Adjudication of All Claims Asserted on Behalf of Bumble.

Proposed Intervenors premise their argument that a stay promotes efficiency by citing authority that demonstrably undercuts their own argument. In *Taylor v. Campanelli*, the state court acquired jurisdiction over a pending derivative action five months prior to a federal court, a factor that weighed in favor of abstention. 29 F. Supp. 3d 972, 979–80 (E.D. Mich. 2014). Here, in contrast, ***this Court*** obtained jurisdiction first—*i.e.*, on April 15, 2022, when Glover-Mott filed her complaint. The Court of Chancery, on the other hand, gained jurisdiction approximately nine months later on January 19, 2023. Further, both plaintiffs in *Taylor* asserted claims governed ***only*** by state law. *Id*. Here, however, Plaintiffs assert claims under the Exchange Act, such that, as explained prior, exclusive jurisdiction over the state rests herein. *See Seafarers*, 23 F.4th at 721. Moreover, the two plaintiffs in *Taylor* stood in different positions as to their allegations regarding demand futility. *Taylor*, 29 F. Supp. 3d at 980. Conversely, Proposed Intervenors and Plaintiffs' demand futility allegations are substantially identical. Finally, in *Taylor*, the federal plaintiff had already filed his derivative action ***in the same state court*** and then withdrew his pleading to refile federally as a tactic to deny the state plaintiff the effect of a previous ruling consolidating the state derivative actions and appointing the state plaintiff as lead. *Id*. at 975. Here, Proposed Intervenors are effectively playing the same role as the federal plaintiff that lost his bid for appointment as

17

lead—they seek to prevent Plaintiffs from gaining the benefits of consolidation in the first-filed matter. Thereby, *Taylor* counsels in favor of declining a stay rather than granting it.

Indeed, in seeking a stay to avert consolidation and adjudication of federal claims indefinitely, Proposed Intervenors act to ***prevent*** "convenience and economy in administration" of these claims. *See In re TMI Litig.*, 193 F.3d at 724. By seeking to stay a court that has jurisdiction over both Plaintiff and Proposed Intervenors' claims asserted in favor of more limited Court of Chancery proceedings that ***cannot*** adjudicate Plaintiffs' claims, Proposed Intervenors seek judicial blessing of gamesmanship tactics. Accordingly, because judicial economy will be impinged by a stay, Proposed Intervenors' Motion should be denied.

### 4.    None of the Factors Governing Federal Abstention Weigh in Favor of a Stay.

More importantly, even if Proposed Intervenors could show any of the customary factors governing a request for a stay weigh in their favor, this Court should ***still*** deny their request because granting it has the effect of declining to exercise jurisdiction over federal claims. *See Colo. River*, 424 U.S. at 817-18 (1976) (finding only exceptional circumstances permit a federal court to refuse to exercise its jurisdiction in deference to state proceedings); *McMurray*, 27 F. App'x 88 at 94 (finding it an abuse of discretion in the Third Circuit to stay a federal derivative action in favor of a Court of Chancery action under federal abstention principles). This Court considers four factors in abstention: "(1) which forum first assumed jurisdiction over the property at issue, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained in the concurrent forums." *McMurray*, 27 F. App'x at 91. These factors counsel against granting the relief requested.

Here, there has been no assumption of jurisdiction over property, so the first factor is not relevant. *See id.* at 93. This Court and the Court of Chancery are situated in Delaware and

Defendants already stipulated to transfer the matter herein. Further, Proposed Intervenors'

invocation of Delaware's interest in resolving issues of "corporate law and shareholders' rights"

is "***not*** a sufficient reason for a federal court to refrain from exercising its jurisdiction." *See id.*

Therefore, the federal forum is not inconvenient. Moreover, because Proposed Intervenors concede

their and Plaintiffs' state claims are functionally equivalent, the avoidance of piecemeal litigation

favors litigation herein, which can adjudicate not only those state claims, but also those arising

under the Exchange Act. *See* Mot. at 6; *NACCO Indus.*, 997 A.2d at 25 (finding the Court of

Chancery cannot hear Exchange Act claims). Finally, this Court gained jurisdiction prior to the

Court of Chancery because Glover-Mott filed the Federal Actions nine months before Proposed

Intervenors filed the Chancery Action. Accordingly, none of the factors governing federal

abstention favor Proposed Intervenors, and the Court should deny the Motion in its entirety.

### C.    THE COURT SHOULD DECLINE TO GRANT THE ALTERNATIVE RELIEF

There are two simple reasons that Proposed Intervenors' additional relief must be also

denied—they cannot meet the factors governing a grant of a stay and those requests also

necessarily implicate the heightened standards governing federal abstention, as explained above.

Further, Proposed Intervenors do not have standing to request dismissal of the Plaintiffs' Exchange

Act claims.[15] Rather, Proposed Intervenors and Plaintiffs are "so identified in interest" because

---

[15]    In the cases cited in the Motion, the defendant, not an intervenor, moved for dismissal of
the remaining federal claims. *In re Resolute Energy Corp. Sec. Litig.*, 2021 U.S. Dist. LEXIS
19193, at *2 (D. Del. Feb. 1, 2021); *Ciro, Inc. v. Gold*, 816 F. Supp. 253, 255 (D. Del. 1993);
*Kooker v. Baker*, 497 F. Supp. 3d 1, 3 (D. Del. 2020); *Hastey v. Welch*, 449 F. Supp. 3d 1053,
1068-69 (D. Kan. 2020). Plaintiffs anticipate briefing Defendants' motion to dismiss soon
enough—there is no need for the Court to consider these issues prematurely presented by the
wrong individuals. Other cases involved dismissal of remining ***state*** claims. *See McDerby v.
Daniels*, 2010 U.S. Dist. LEXIS 59489, at *18 (D. Del. June 16, 2010); *Smith v. City of Enid*, 149
F.3d 1151, 1156 (10th Cir. 1998); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).
Further, because a dismissal would effectively decline federal jurisdiction in favor of state

they both rely on the same corporate documents from Bumble, both gained pursuant to a 220 Request, that there is no basis to limit the collateral estoppel effects of any decisions rendered herein. *See Cal. State Teachers' Ret. Sys. v. Alvarez*, 179 A.3d 824, 846 (Del. 2018) (applying estoppel against the later plaintiffs even when they had the benefit of the corporate documents the earlier did not); *see also Facebook*, 367 F. Supp. 3d at 1130 (finding potential intervenor had same interest as the existing derivative plaintiffs); *Gen. Star Indem. Co.*, 224 F.R.D. at 376-77 (same). Accordingly, all alternative relief requested by Prospective Intervenors should also be denied.

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request this Court deny the Motion in its entirety.

Dated: August 1, 2023

*/s/ Thomas A. Uebler*
Thomas A. Uebler (#5074)
**MCCOLLOM D'EMILIO SMITH UEBLER LLC**
Little Falls Centre Two
2752 Centerville Road, Suite 401
Wilmington, DE 19808
Telephone: (302) 469-5960
Email: tuebler@mdsulaw.com

*Liaison Counsel for Plaintiff Michael Schirano and Proposed Liaison Counsel*

OF COUNSEL:
Melinda A. Nicholson
Nicolas Kravitz (#6107)
Jenn Tetreault
**KAHN SWICK & FOTI, LLC**
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 648-1842
Email: melinda.nicholson@ksfcounsel.com

---

proceedings, it necessarily invokes the same federal abstention principles. *See Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) ("The Defendants have not cited to, nor could we find, a circuit court that has held a federal court may use *Colorado River* to stay **or dismiss** a claim within the exclusive jurisdiction of the federal courts.").

nicolas.kravitz@ksfcounsel.com
jenn.tetreault@ksfcounsel.com

*Counsel for Plaintiff Michael Schirano and
Proposed Co-Lead Counsel*


Brian D. Long (#4347)
**LONG LAW, LLC**
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: bdlong@longlawde.com

*Liaison Counsel for Plaintiff Marilee Glover-Mott*

OF COUNSEL:
Michael J. Hynes
Ligaya T. Hernandez
**HYNES & HERNANDEZ, LLC**
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: (484) 875-3116
Email: mhynes@hh-lawfirm.com
         lhernandez@hh-lawfirm.com

*Counsel for Plaintiff Marilee C. Glover-Mott and Proposed
Co-Lead Counsel*

Melissa A. Fortunato
Marion C. Passmore
**BRAGAR EAGEL & SQUIRE, P.C.**
810 Seventh Avenue, Suite 620
New York, NY 100019
Telephone: (212) 308-1869
Email: fortunato@bespc.com
         passmore@bespc.com

*Additional Counsel for Plaintiff Marilee C. Glover-Mott*